UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DAVID A. GAMBINO,
*Prisoner Identification No.* 19757055,

    Plaintiff,

v.

DR. MOUBAREK, M.D.,
CAROL MILLER, HIT,
KRISTI CRITES, CRNP,
TOM GERA, RN,
TODD C, PA-C,
JODY AMERZUA, LRN,
BOCH P, RN,
VANMETER DENISE, RN,
WARDEN STEWART,
MCGAHEE TEQUILA, DMD,
BLAINE SMITH, MD, and
CARRIE HANSCOM, Director of Radiology,

    Defendants.

Civil Action No. TDC-15-2202

### MEMORANDUM OPINION

Plaintiff David A. Gambino, an inmate at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), has filed suit alleging violations of the Eighth Amendment to the United States Constitution, the Americans with Disabilities Act ("ADA"), 24 U.S.C. §§ 12101-12213 (2012), the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb-4 (2012), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80 (2012), by twelve employees of FCI-Cumberland (collectively, "Defendants"). Pending is the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by counsel for the United States, who has entered an appearance on behalf of Defendants in their official capacities only. ECF No. 15. In addition, Defendants Blaine Smith,

M.D. and Carrie Hanscom, by their private counsel, have filed a Motion to Dismiss, or in the Alternative, Motion for a More Definitive Statement ("the Smith/Hanscom Motion"). ECF No. 22. Gambino has also filed two motions that are now pending: a Motion for Leave to File Discovery, ECF No. 38, and a Motion for Injunctive Relief, ECF No. 47. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, the United States' Motion is GRANTED, and the Smith/Hanscom Motion and Gambino's Motions are DENIED AS MOOT.

## BACKGROUND

On July 28, 2015, Gambino filed a Complaint for injunctive and monetary relief. He asserts that Defendants exhibited deliberate indifference to his serious medical needs in violation of the Eighth Amendment by providing inadequate medical and dental care and depriving him of sufficient water during a hunger strike. He claims that Defendants' refusal to furnish certain medical devices, such as a cane, violated the ADA. He also argues that Defendants violated RFRA by denying him access to routine dental services such that he was forced to choose between the extraction of a tooth—which would be contrary to his religious beliefs—and the possibility of a life-threatening infection.

The United States' Motion argues that the FTCA claims should be dismissed for lack of subject matter jurisdiction, and that the Complaint overall should be dismissed or summary judgment granted in Defendants' favor because Gambino did not exhaust administrative remedies before filing suit as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e(a). The Smith/Hanscom Motion seeks dismissal based on a variety of legal theories, including the failure to exhaust administrative remedies.

## DISCUSSION

### I. Federal Tort Claims Act

The United States argues that to the extent that Gambino asserts claims under the FTCA, they should be dismissed for lack of subject matter jurisdiction. Under the FTCA, a plaintiff may not bring suit against the United States for damages arising from an injury caused by the negligent act or omission of a federal employee unless the plaintiff has first filed an administrative claim with the agency and the claim has been denied by the agency in writing. 28 U.S.C. § 2675(a). This requirement is jurisdictional. *Kokotis v. U.S. Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000). Here, Gambino has not filed an administrative tort claim. Thus, any FTCA claims contained in the Complaint are dismissed.

### II. Exhaustion of Administrative Remedies

The United States seeks dismissal or summary judgment based on Gambino's failure to exhaust administrative remedies. Gambino admits both in the Complaint and his Memorandum in Response to the United States' Motion ("Response") that he did not satisfy the PLRA's exhaustion requirements. He contends, however, that he should be excused from those requirements because Defendants have repeatedly sabotaged his attempts to utilize prison grievance procedures.[1]

---

[1] On December 30, 2015, Gambino submitted a surreply. The surreply was not docketed because Gambino did not include a motion requesting leave to file a surreply. D. Md. Local R. 105.2(a) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). Because Gambino's proposed surreply brief reiterates his earlier arguments relating to exhaustion and does not "contest matters presented to the court for the first time in the opposing party's reply," the Court would not have granted such a motion had it been filed. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003).

A.      **Legal Standard**

Exhaustion of administrative remedies is an affirmative defense, and Defendants bear the burden of proof. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Both the United States and Gambino have submitted documents and declarations in support of their arguments regarding exhaustion. If the Court considers these documents, then it must treat the Motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Although a party may move for summary judgment before the commencement of discovery, see Fed R. Civ. P. 56(b), "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). Gambino has requested discovery from Defendants in the Complaint, his Response, and his Motion for Leave to File Discovery relating to his allegedly deficient medical treatment and his allegations of medical records fraud underlying his now-dismissed False Claims Act claim. He has not argued that discovery is necessary to gather information essential to opposing Defendants' arguments on exhaustion. Instead, Gambino has addressed exhaustion thoroughly in the Complaint, his Response, a declaration, and several exhibits. Consequently, the Court will consider exhaustion-related documents submitted by the parties and construe the United States' Motion as one for Summary Judgment. *See* Fed. R. Civ. P. 12(d); *Moore*, 517 F.3d at 725-26 (holding that a court may dismiss a prisoner's complaint "on exhaustion grounds so long as the inmate is first given an opportunity to address the issue").

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not on the assertions in the pleadings. *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A material fact is one that might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson*, 477 U.S. at 248) (internal quotation marks omitted). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49.

## B.     The PLRA Exhaustion Requirement

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement serves a valuable function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

An inmate need only exhaust "available" remedies, and "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725. But an inmate does not exhaust administrative remedies "simply by failing to follow the required steps so that remedies that once were available to him no longer are." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The Bureau of Prisons ("BOP") has established an Administrative Remedy Program for inmates to raise concerns related to their confinement. *See* 28 C.F.R. §§ 542.10 – 542.19 (2015). Inmates must first seek informal resolution of their grievances. *Id.* § 542.13(a). An inmate who is unable to resolve the complaint informally may then file a formal written complaint, known as an Administrative Remedy Request, on form BP-9 within 20 calendar days of the event on which the complaint is based. *Id.* § 542.14(a). The Warden must respond within 20 days, unless the request involves an emergency, in which case the response is due in three days. *Id.* § 542.18. The inmate has 20 days to appeal the Warden's response to the Regional Director, using form BP-10. *Id.* at § 542.15(a). The inmate may then, within 30 days of the Regional Director's response, appeal to the BOP Office of General Counsel ("General Counsel") using BP-11. *Id.*

If at any stage of the process the inmate fails to follow proper procedures, the grievance or appeal is not accepted for filing and is instead rejected and returned to the inmate with an explanation of the reason for the rejection. *Id.* § 542.17(a), (b). If the error is correctable, the inmate is provided with a reasonable amount of time to resubmit the request or appeal in order to obtain a formal decision. *Id.* § 542.17(b). An inmate has not exhausted administrative remedies

until the complaint has ascended through all four levels of the Administrative Remedy Program process (informal grievance, institution, Regional Office, and General Counsel), culminating in a formal decision from the General Counsel. *See id.* § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal."); *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (dismissing a federal inmate's lawsuit on exhaustion grounds because he failed to complete the four stages of the BOP's grievance process); *Gibbs v. Bureau of Prison Office*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (same).

### C. Failure to Exhaust Gambino's Administrative Claims

BOP records submitted by Defendants show that, as of October 5, 2015, Gambino had filed 14 administrative remedy requests at FCI-Cumberland. Of these requests, five concerned dental treatment, two addressed treatment during a hunger strike, three complained of medical treatment in general, and four related to the denial of medication and medical devices. For 12 of the requests, Gambino never submitted an appeal to the General Counsel. For the remaining two requests, relating to the denial of medication, Gambino filed appeals with the General Counsel, but both submissions were rejected for failure to follow required procedures and were returned to Gambino without a decision on the merits. Gambino did not correct and resubmit these appeals.

Gambino protests that Defendants' exhibits omit two recent appeals to the General Counsel, submitted on September 25, 2015 and October 6, 2015. These appeals are irrelevant, however, because they are still pending. Gambino does not claim to have received a decision from the General Counsel on the merits of any administrative remedy request. Given that Gambino's Complaint and Response concede that he has not completed the four levels of review required to exhaust administrative remedies under the PLRA, Gambino's claims are subject to dismissal.

Gambino maintains that this suit should still proceed because the BOP generally, and Defendants in particular, manipulated the grievance process to "delay, reject, and deny long needed medical relief" through "tactically designed rejections" and to "stall, delay, deny, and 'PUNISH'" him for protesting about prison conditions. Resp. at 6 (emphasis in original). It is possible for prison officials to obstruct the grievance process to such an extent that "the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Failing to respond to grievances, *Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002), refusing to provide inmates with necessary forms, *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004), and threatening or retaliating against an inmate for filing grievances, *Kaba*, 458 F.3d at 685-86, can all render administrative remedies unavailable and excuse an inmate's failure to complete the procedural requirements for exhaustion. Gambino, however, does not allege interference that rises to the level of rendering the administrative process unavailable to him.

In arguing that the administrative process has been rendered unavailable, Gambino complains that his administrative remedy requests have been returned missing exhibits that he attached to them, costing him time and money since he must include those exhibits in his appeals. However, the prison officials' failure to return exhibits submitted along with Gambino's administrative remedy requests and appeals is consistent with BOP regulations. 28 C.F.R. § 542.14(c)(3) ("Exhibits will not be returned with the response. Because copies of exhibits must be filed for any appeal . . . the inmate is encouraged to retain a copy of all exhibits for his or her personal records."). The policy no doubt inconvenienced Gambino, but it did not actually prevent him from pursuing an appeal, and Gambino does not claim otherwise.

Gambino also argues that his failure to exhaust administrative remedies should be excused because his deteriorating physical and psychological condition made it increasingly

difficult for him to navigate the bureaucratic labyrinth of the grievance process, and he faults the staff of FCI-Cumberland for not assisting him. Although Gambino believes that prison staff should have assisted him in filing grievances in light of his medical issues, he does not allege that he ever requested, or was refused, such assistance, or that his ailments left him physically incapable of filing administrative remedy requests or appeals. *See* 28 CFR § 542.16(b) ("Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English."); *Ramos v. Smith*, 187 F. App'x 152, 154 (3d Cir. 2006) (holding that an inmate's illiteracy did not excuse his failure to exhaust administrative remedies when he never requested assistance from the Warden in appealing the denial of a grievance). Relatedly, Gambino asserts that medical exigency compelled him to file the Complaint before exhausting administrative remedies so that he could obtain immediate relief from the Court. This argument also fails because, although Gambino details a host of medical problems, many of which appear to involve significant pain and discomfort, he does not describe a medical emergency or indicate that he asked prison officials to treat any of his administrative remedy requests as emergency requests subject to expedited review. *See* 28 C.F.R. § 542.18.

Gambino also claims that he should be excused from exhausting administrative remedies because prison officials have retaliated against him. But his examples of retaliation do not relate to his use of grievance procedures. He claims that prison officials falsified his medical records to cover up inadequate medical care. He also alleges that prison officials cut off water to his cell during a hunger strike, which he had initiated to protest inadequate medical care, then placed him in a three-person cell rather than a two-person cell. Thus, the alleged retaliation would have been for engaging in a hunger strike, not for having filed administrative remedy requests. The

fact that Gambino filed two grievances related to his treatment during the hunger strike shows that this alleged retaliation did not deprive him of access to the prison's grievance procedures.

Finally, Gambino offers three specific examples that he claims establish that prison officials have not reviewed his grievances in good faith, subjecting him to lengthy delays and baseless rejections. In Administrative Remedy Request No. 825113, filed with the Warden on June 9, 2015, Gambino complained that his prison medical records did not include a dental care plan prescribed by a previous dentist and that plaque was accumulating on his teeth. The Warden's response was due within 20 days. 28 C.F.R. § 542.18. Gambino waited 37 days for a response before appealing the constructive denial of his grievance to the Mid-Atlantic Regional Office on July 16, 2015. Two days after the Regional Office received Gambino's appeal, Gambino received a response to his initial administrative remedy request from the Warden, which was "back dated" to before he filed his appeal. Resp. at 10. The Regional Office then rejected Gambino's appeal for failing to include the Warden's response and directed him to refile. When Gambino sought to do so, prison staff provided him with the incorrect form, further delaying the process. Gambino's appeal to the General Counsel was rejected for the same reason provided by the Regional Office. Nevertheless, this alleged malfeasance did not deprive Gambino of access to administrative remedies. Even if the Regional Office should have decided Gambino's appeal without first requiring him to submit the Warden's untimely response, Gambino did not lose the opportunity to pursue his complaint. He was merely required to refile his appeal. Similarly, the fact that prison staff provided Gambino with the wrong form only resulted in the rejection of an appeal but did not prevent him from resubmitting it. *Cf. Dale*, 376 F.3d at 656 (vacating summary judgment for failure to exhaust where the prisoner claimed that prison officials withheld necessary forms and thus prevented him from filing a grievance).

Gambino's second example of bad faith by Defendants and the BOP is Request Number 818561, filed on April 24, 2015. Gambino complained about Defendant Dr. Mohamed Moubarek's decision to cancel chronic care medication and medical devices prescribed when Gambino was incarcerated at FCI-McKean. The Warden responded to the administrative remedy request by explaining Dr. Moubarek's decision. Gambino appealed to the Regional Office and then to the General Counsel, which rejected the appeal for procedural reasons. Gambino contends that he did not refile because the appeal form was returned to him "stripped" of supporting paper work. Resp. at 14. When he sought to find copies, members of the prison's Unit Team yelled at him, telling him that he should have his own copies. At this point, Gambino was "exhausted by the looping of his grievance forms" and feared that the Unit Team would retaliate against him. *Id.* Gambino, however, does not allege that he followed applicable procedures or that the General Counsel's rejection of his appeal was improper. Although prison officials' threats could render the grievance procedure unavailable, *see Kaba*, 458 F.3d at 685-86, Gambino claims only that Unit Team members yelled at him when he asked them for copies that prison regulations do not require them to provide. He does not claim that they threatened him or otherwise interfered with his appeal.

As his third example, Gambino complains that the Warden incorrectly rejected an administrative remedy request in which Gambino alleged that Dr. Moubarek not only canceled prescribed medications and treatments but also excluded medical records from Gambino's file that suggested the importance of those medications and treatments. The Warden rejected this request as repetitive of Request No. 818561, described above. Gambino asserts that the Warden should have allowed his medical records complaint to proceed as a separate grievance. But the Warden's decision was not unreasonable. Both of Gambino's grievances advanced the same

complaint: that Moubarek improperly discontinued medications and treatment. The second grievance expanded on the first by explaining how Dr. Moubarek justified that decision. The Warden concluded that resolving the first request would also address the second. If that proved not to be the case, Gambino could have resubmitted the medical records fraud component of his grievance. In any event, whether Gambino exhausted administrative remedies related to his allegation of medical records fraud is immaterial to this case since his False Claims Act claim has already been dismissed.

Lastly, Gambino notes that two administrative remedy requests that he filed over 16 months ago have yet to be resolved. Defendants point out, however, that those requests address Gambino's medical treatment at a different prison and so are not at issue in this lawsuit.

Viewed in the light most favorable to Gambino, the evidence does not show that the Warden or any other prison officials hindered Gambino's participation in the BOP's grievance procedure to the extent that administrative remedies were unavailable to him. Gambino describes understandable frustration with his unsuccessful efforts to adhere to precise grievance procedures with specific deadlines, with limited resources, while suffering from various ailments. Nevertheless, Congress has mandated that all prisoners follow a correctional institution's applicable procedures before seeking relief in federal court. There is no dispute of material fact regarding Gambino's failure to exhaust administrative remedies. Therefore, the United States' Motion, construed as a motion for summary judgment, is granted, and the claims against Defendants in their official capacities are dismissed.

For the same reasons, the Court dismisses all claims against Defendants in their individual capacities. *See Moore*, 517 F.3d at 725 (finding that a court may raise the issue of PLRA exhaustion *sua sponte* and dismiss a complaint for failure to exhaust administrative

remedies so long as the inmate had an opportunity to address the issue). Because all claims are dismissed, the Smith/Hanscom Motion is denied as moot.[2] The Court notes that the dismissal of Gambino's claims does not relieve FCI-Cumberland of its ongoing obligations to ensure that Gambino receives appropriate medical care, that he is not hindered in filing grievances and appeals, and that any such grievances and appeals are resolved in a timely and fair manner.

## IV. Gambino's Motions

Because all claims are dismissed, Gambino's Motion for Leave to File Discovery, ECF No. 38, and Gambino's Motion for Injunctive Relief, ECF No. 47, which the Court construes as claiming that Gambino is being deprived of the use of his legal materials in the present case, are denied as moot.

To the extent that Gambino would seek to initiate a new case alleging a deprivation of property, namely, Gambino's legal materials, the Court reminds Gambino that such a claim must first be made through the available administrative procedures for property claims and may only be asserted in a federal court action upon exhaustion of those remedies.

---

[2] Although the Smith/Hanscom Motion sought dismissal of the claims against Smith and Hanscom in their individual capacities based on exhaustion of administrative remedies, it did not seek summary judgment or provide documents to establish such exhaustion. Because all claims are dismissed, the Court need not address the remaining grounds for dismissal asserted in the Smith/Hanscom Motion.

## CONCLUSION

For the foregoing reasons, the United States' Motion for Summary Judgment is GRANTED. All claims are dismissed for failure to exhaust administrative remedies. The Smith/Hanscom Motion, Gambino's Motion for Leave to File Discovery, and Gambino's Motion for Injunctive Relief are DENIED AS MOOT. A Separate Order shall issue.

Date: April 21, 2016

THEODORE D. CHUANG
United States District Judge